O'KELLEY v. UNITED STATES.
TREADWAY v. SAME.

Nos. 11649, 11651, 11652.

Circuit Court of Appeals, Eighth Circuit.
Jan. 13, 1941.

Hugh Carney, of Atlanta, Tex., for appellant O'Kelley.

Bert B. Larey, of Texarkana, Ark., for appellant Treadway.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark. (Duke Frederick, Asst. U. S. Atty., and John E. Harris, Asst. U. S. Atty., both of Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

These appeals are in effect from three convictions. Appellants O'Kelley and Treadway, with six other individuals, were indicted for a conspiracy "to commit certain offenses against the United States and to do and commit certain acts made offenses by Section 409, Title 18, U.S.C.A., in and by unlawfully, knowingly, and feloniously breaking into and entering a certain railroad car, initialed and numbered Southern 14222, containing an interstate shipment of freight, to-wit, granulated sugar, which railroad car was on a side track of the Kansas City Southern Railway Company at Ravana, Arkansas and further to unlawfully and feloniously steal, take, and carry away from said railroad car and to conceal with the felonious intent to convert to their own use large quantities of said granulated sugar from said railroad car, which said sugar was moving as and which was a part of and which constituted an interstate shipment of freight and which had theretofore been shipped from the Southcoast Corporation, Mathews, Louisiana, and consigned to the Howe Wholesale Company, Ravana, Arkansas." Five overt acts alleged to have been committed by the defendants to effect the object of the conspiracy are set forth in the indictment.

Appellant Treadway was separately indicted in an indictment of two counts. The first charged him with the unlawful, wilful and felonious conversion, receipt, having in his possession, and concealment of seventeen 100-pound sacks of granulated sugar, stolen, taken, and carried away from the railroad car above described, then in the possession of the Kansas City Southern Railway Company on a side track at Ravana, Arkansas, it being alleged that the sugar constituted an interstate shipment of freight which had been shipped from Mathew, Louisiana, to the Howe Wholesale Company, at Ravana, Arkansas. The

second count involved the same property, and charged the defendant with the unlawful, wilful and felonious transportation of it in interstate commerce; to-wit, from the vicinity of Ravana, in the State of Arkansas, to the vicinity of Atlanta, in the State of Texas, knowing that the sugar had been stolen from the interstate shipment of freight described.

The three cases were consolidated for purposes of trial. In the conspiracy case the Government dismissed as to one defendant; the jury acquitted another defendant and disagreed as to the guilt of four other defendants, but returned a verdict of guilty against appellants O'Kelley and Treadway. The jury also found appellant Treadway guilty on both counts of the indictment against him. From the judgments entered these appellants have filed separate appeals. We shall refer to the appellants as defendants, and we shall first consider the conspiracy case.

This indictment charges a conspiracy to violate Section 409, Title 18, United States Code, 18 U.S.C.A. § 409, which makes it unlawful to break the seal of any railroad car containing interstate or foreign shipments of freight, or to enter such car, with intent in either case to commit larceny therein, or to steal or take away from any such car goods or chattels which are moving or are a part of an interstate or foreign shipment of freight. Defendants, at the close of all the testimony, moved for a directed verdict of not guilty upon the ground, among others, that it appeared from the undisputed testimony that the shipment of sugar involved had lost its interstate character at the time the car was broken into. The refusal of the court to grant this motion is urged as error, and in our view of the case it will not be necessary to consider the other alleged errors.

On May 3, 1939, the Southcoast Corporation loaded into a Southern Railway Company car initialed and numbered 14222, in possession of the Kansas City Southern Railway Company at Mathew, Louisiana, 600 sacks of granulated sugar, with some other goods, and consigned it to Howe Wholesale Company, at Ravana, Arkansas. It was shipped on a non-negotiable bill of lading, the charges being prepaid. This box car, after being loaded, was properly sealed and was transported by the Kansas City Southern Railway Company from Shreveport, Louisiana, to Ravana, Arkansas, where it was set out on a spur track. Ravana, Arkansas, at the time of the transportation of this car of sugar, did not have a station agent. The conductor in charge of the train which transported the car delivered the way bill to the agent at Bloomburg, a station five miles beyond Ravana. The station agent at Bloomburg telephoned the consignee at its place of business at Atlanta, Texas, advising that the car of sugar consigned to it had arrived and had been set out at Ravana, Arkansas, its destination. The day following the receipt of notice of the arrival of the car, the representative of the consignee went to Ravana, broke one of the seals of the car, opened it, and unloaded into a truck 100 sacks of the sugar, then closed the door of the car and put a private padlock to secure the door. Two days later, trucks were sent over to unload the balance of the sugar, and it was unloaded onto the trucks, but there was a shortage of seventeen sacks of sugar. When the representative of the consignee first went to the car, the seals were all intact, and thereafter the private padlock of the consignee replaced the broken seal. The key to the padlock was retained by the consignee, and it had the exclusive possession of and exercised dominion over the car and its contents from the time the seal was broken. It is claimed that the defendants, with other confederates, after the car had been opened by the consignee and a part of its contents removed, entered it and stole seventeen sacks of sugar therefrom.

Under the evidence, the carrier had completely fulfilled its contract of transportation. It had not only given notice to the consignee of the arrival of the car, but the consignee had taken possession and removed at least a part of the carload of sugar and placed its own private padlock on the car. On the following day the car was broken into and seventeen sacks of sugar were taken. It was the duty of the carrier to make delivery of the property entrusted to it, and it was the duty of the consignee to accept that property. Both of these duties had been performed before the seventeen sacks of sugar were stolen. It must be borne in mind that this entire carload of goods was consigned to the Howe Wholesale Company, at Ravana, Arkansas, and when it accepted the car, broke the seal, removed part of its contents, and placed its private padlock on the door, the carrier no longer had possession but had surrendered dominion over the property to the consignee, and the consignee in

turn had accepted and assumed full dominion and control over the property. This, we think, was a final and complete delivery. It was no longer a subject of interstate commerce. Gulf, C. & S. F. R. Co. v. Texas, 204 U.S. 403, 27 S.Ct. 360, 51 L.Ed. 540; Gus Datillo Fruit Co. v. Louisville & N. R. Co., 251 Ky. 566, 65 S.W.2d 683; State v. Intoxicating Liquors, 106 Me. 138, 76 A. 265, 29 L.R.A.,N.S., 745, 20 Ann.Cas. 668; Bozworth v. Wabash Ry. Co., 332 Mo. 277, 58 S.W.2d 448.

■ Great reliance is placed by the Government upon the decision of this court in Marifian v. United States, 82 F.2d 628, 630. In that case, defendants were indicted in three counts, the first charging possession of 27 boxes of cigars stolen from "a certain motor truck in the City of East St. Louis, in the State of Illinois * * * and which said cigars were then and there in the custody and possession of said Weber Drayage and Warehouse Company and were then and there moving and constituted a part of an interstate shipment of freight"; the second charging similar possession of another brand of cigars, and the third charging a conspiracy to receive, possess, offer for sale, and to transport the cigars. In that case, the consignee had its place of business in St. Louis, Missouri. The consignor shipped from Richmond, Virginia, a shipment consigned to the consignee at St. Louis, Missouri. The consignment reached East St. Louis, Illinois, on its journey. Instead of being carried further by rail carrier, it was there met by truck to be carried to the consignee's place of business in St. Louis, Missouri. The truck took certain of the cartons of cigars, leaving other cartons to be subsequently called for and received by the consignee. After the truck proceeded a short distance, and while it was still in East St. Louis, Illinois, it was taken possession of by an armed man, who ultimately ejected the driver. It is first observed that the shipment was apparently not a carload lot, and the defendants were convicted for intercepting and taking the property from the motor truck while it was being transported from East St. Louis, Illinois, to St. Louis, Missouri, which was an interstate transportation. There was no contention there that the car had been accepted by the consignee; in fact, it had not arrived at its destination, but it was contended that the delivery of the goods in question to the truck was a delivery to the consignee and the termination of the interstate journey within the meaning of the statute. This court pointed out that at the time the truck was intercepted and the goods taken, it was transporting the goods in interstate commerce, and that the language of the act, while it included common carriers, was not limited to such carriers but that it was "broad and general enough to cover any interstate carriage by the vehicles designated whether such carriage be by a public carrier or otherwise." The facts are clearly distinguishable. In the Marifian case there was a direct taking of the property while it was being transported in interstate commerce. In the instant case the property had been received and accepted at its destination. The property was then not the subject of interstate commerce. We conclude that the court should have directed a verdict of not guilty on the conspiracy indictment.

■ What has been said with reference to the conspiracy indictment is equally applicable to both counts of the indictment against Treadway. A common law larceny is not in itself a federal offense. It is an offense only when the property taken is at the time of the theft a part of an interstate or foreign shipment of freight. As the subject of the larceny here did not when taken constitute an article of interstate commerce, it was not within the protection of the Federal statute. A verdict of not guilty should therefore have been directed as to both counts of the indictment against Treadway.

The judgments appealed from are therefore reversed and the cases are remanded to the lower court for such further proceedings as shall be consistent with this opinion.