**UNITED STATES of America**

v.

**APEX DISTRIBUTING COMPANY, Inc.,**
Albert A. Finer, Hubert O'Reilly.

**Cr. No. 6516.**

United States District Court
D. Rhode Island.
Jan. 18, 1957.

Joseph Mainelli, U. S. Atty., Providence, R. I., for plaintiff.

Jacob S. Temkin, Amedeo C. Merolla, Providence, R. I., for defendants.

DAY, District Judge.

This is an indictment which consists of seven counts. The defendants, Apex Distributing Company, Inc. and Albert A. Finer, have moved to dismiss it on the following grounds, viz.:

1. The indictment, as to Count I, contains allegations repugnant to each other.

2. The indictment, as to each of the Counts, does not inform the said defendants of the nature and cause of the accusation.

3. The indictment, as to each of the Counts, does not state facts sufficient to constitute an offense against the United States.

Count I charges as follows:

"From and after June 1, 1954, and continuously and at all times thereafter up to and including the date of this indictment, within the District of Rhode Island and elsewhere, Apex Distributing Company, Inc., a Nevada corporation, Albert A. Finer, alias John Doe, and Hubert O'Reilly, alias Richard Doe, (hereinafter referred to as the defendants) did wilfully, knowingly and unlawfully conspire, combine, confederate and agree together and each with the other,

"A. To defraud the United States of and concerning:

"1. Its governmental function and right to administer the business and affairs of the United States Navy, a Department of the United States (hereinafter referred to as the Department) and the rules and regulations duly issued and pertaining thereto, free from unlawful impairment, corruption, improper influence, dishonesty and fraud.

"2. Its governmental function and right to have the business and affairs of the United States Naval Construction Battalion Center, an agency of said Department (hereinafter referred to as the Agency) located in Davisville, within the District of Rhode Island, conducted on its behalf fairly, honestly and free from fraud, deceit, partiality, concealment, interference and corruption; and

"3. Its right to the conscientious, faithful, disinterested and unbiased judgment and determination of, and action by one Chief Pay Clerk, Wallace Albert Robinson, (hereinafter referred to as Robinson) an officer of said Department and officially connected with said Agency, concerning matters affecting said Agency, and to have such judgment, determination and action exercised free from corruption, partiality, improper influence, bias, dishonesty and fraud.

"B. To commit certain offenses against the United States, to wit:

"1. The crime of bribery in violation of Title 18, United States Code, Section 201;

"2. The crime of knowingly making false statements and entries in violation of Title 18, United States Code, Section 1001;

"3. The crime of knowingly and fraudulently obtaining from the United States moneys in excess of $100. by means of false and fictitious invoices in violation of Title 18, United States Code, Section 1003;

"4. The crime of knowingly making false, fictitious and fraudulent claims upon and against the United States in violation of Title 18, United States Code, Section 287;

"5. The crime of knowingly, and with intent to defraud and mislead, introducing and delivering for introduction into interstate commerce certain misbranded food in violation of Title 21, United States Code, Section 331 et seq. * * *"

Count I then sets forth in considerable detail the means by which the several objects of the conspiracy were to be accomplished and alleges certain specific overt acts which the government claims were performed by the defendants in furtherance of and for the purpose of carrying said conspiracy into execution.

In Hammerschmidt v. United States, 265 U.S. 182, at page 188, 44 S.Ct. 511 at page 512, 68 L.Ed. 968, the Supreme Court held:

"To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."

See also Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569; Hills v. United States, 9 Cir., 97 F.2d 710; Braatelien v. United States, 8 Cir., 147 F.2d 888; United States v. O'Toole, D.C.R.I., 101 F.Supp. 123.

Count I in part "A" clearly alleges that one of the objects of the conspiracy of the defendants was to defraud the United States of and concerning certain of its governmental functions. In my opinion the interference with or obstruction of a governmental function by the means alleged in Count I is a fraud upon the United States within the meaning of Title 18 U.S.C.A. § 371.

■ The defendants, however, contend that Count I is fatally defective because it does not allege that Robinson had certain duties to perform in an official capacity and that he was acting on an official matter in his official capacity and because it is alleged therein that the defendants knew that he had no authority to place orders under the contract which had been procured by the defendants. I find no merit in these contentions. Count I alleges that Robinson was an officer of the United States Navy. When the bribee is an officer of the

United States there is no need to show that he was acting in an official capacity. It is sufficient to allege and show that the bribe was given with intent to influence him to commit or aid in the committing of any fraud on the United States. Wilson v. United States, 4 Cir., 230 F.2d 521; Hurley v. United States, 4 Cir., 192 F.2d 297; Canella v. United States, 9 Cir., 157 F.2d 470. In Hurley v. United States, supra, the Court said, 192 F.2d at page 300—

"When the bribee is an officer of the United States, there is no necessity to show that he was acting in an official capacity, in order to make out a case under 18 U.S.C.A. § 201. We hold, therefore, that since Sergeant Nichols was an officer of the United States, it was not necessary to allege or prove that he was acting in an official function. To hold otherwise would be to make the words 'officer or employee' completely nugatory. It is sufficient if it be shown that the bribee was an officer of the United States and that the bribe was given 'with intent to influence him to commit or aid in committing * * * any fraud, on the United States' or with intent 'to induce him to do or omit to do any act in violation of his lawful duty.' * * *

"If Congress had intended that an officer or employee must be acting in an official function to violate § 201, why were the words 'officer or employee' inserted in the statute? The term 'person acting for the United States in an official function' is broad enough to include officers and employees. We do not believe that Congress so intended, but rather a distinction was drawn between officers or employees on the one hand, and persons acting for the United States in an official function on the other. * * *"

This distinction between officers of the United States and persons acting for the United States in an official function is, I believe, also clearly recognized in the case of Kemler v. United States, 1 Cir., 133 F.2d 235, cited by the movants. See also Kellerman v. United States, 3 Cir., 295 F. 796. In Canella v. United States, supra, the Court said, 157 F.2d at page 481—

"* * * * Canella apparently overlooks the fact that whenever officers of the United States army take any action whatever in regard to the army their official duties are involved. The United States is entitled to army officers who do not corruptly sell their recommendations to anyone on any subject."

Since it is alleged that Robinson was an officer of the United States Navy, it is immaterial that he lacked authority to place the orders in question. As stated in Hurley v. United States, supra, 192 F.2d at page 300—

"In view of these decisions, it would indeed be anomalous to say that a case is not made out where the bribee has the power to accomplish the illegal result, but not the authority. The gist of the offense here is the giving of money to an officer of the United States to impede the success of a lawful function of government."

█ Generally speaking, an indictment must contain sufficient allegations to inform the accused of the nature of the offense and apprise him of the charges against him so that he may properly prepare his defense and avail himself of his conviction or acquittal against a further prosecution for the same offense. Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; Enrique Rivera v. United States, 1 Cir., 57 F.2d 816.

█ In my opinion Count I insofar as it charges a conspiracy to defraud the United States of and concerning the governmental functions therein specified is legally sufficient. Cf. Glasser v. U. S., 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

As hereinbefore stated, Count I also charges in part "B" thereof that other

objects of the alleged conspiracy were to commit certain specific offenses against the United States. No details or particulars as to any of said crimes are given. For example, the first of said objects is stated to be: "The crime of bribery in violation of Title 18, United States Code, Section 201." There is no identification of the person whom the defendants planned to bribe, no statement of his connection with the United States government, no description of the bribe which was promised, offered or given or of the purpose for which it was promised or offered or given. There is a similar complete lack of particulars with respect to the remaining crimes alleged to have been objects of the alleged conspiracy.

▇ While it is true that where the object of a conspiracy is to commit a crime, the crime to be committed need not be described with the same degree of particularity that might be required in an indictment charging its commission as a substantive offense, this does not mean that no particulars whatever as to such crime need be given. And this is especially true where the statute employs broad and comprehensive language descriptive of the general nature of the offense denounced. Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L. Ed. 419; Anderson v. United States, 8 Cir., 260 F. 557; United States v. Mercer, D.C.N.D.Cal., 133 F.Supp. 288; United States v. Cawthon, D.C.M.D.Ga., 125 F.Supp. 419; United States v. White, D.C.S.D.Cal., 69 F.Supp. 562. In the leading case of Pettibone v. United States, supra, the Supreme Court held, 148 U.S. at page 203, 13 S.Ct. at page 545—

> "A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means, and the rule is accepted, as laid down by Chief Justice Shaw in Commonwealth v. Hunt, 4 Metc., Mass., 111, that, when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment, while if the criminality of the offense consists in the agreement to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out."

▇▇ In my opinion the allegations of part "B" of Count I do not meet the requirements laid down in Pettibone v. United States, supra. On its face, part "B" would not serve as a basis for a plea of double jeopardy as to any or all of the alleged objects of the conspiracy set forth therein and does not sufficiently apprise the movants of what they would be required to meet at trial. The movants are entitled to this information and it cannot be supplied by inference or implication. Likewise, this part of Count I cannot be aided by resort to the averments of overt acts contained in said Count for nowhere in this portion of Count I is there any reference to the clauses setting forth the overt acts. Joplin Mercantile Co. v. United States, 236 U.S. 531, 35 S.Ct. 291, 59 L.Ed. 705; Pettibone v. United States, supra; Hamner v. United States, 5 Cir., 134 F.2d 592.

▇ Concluding, as I do, that part "B" of Count I is legally insufficient, the question arises—should Count I be dismissed? Being legally insufficient, part "B" may be regarded as surplusage and withdrawn from the consideration of the jury. Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793; United States v. Albanese, 2 Cir., 224 F.2d 879; Bailey v. United States, 5 Cir., 5 F.2d 437. Since part "A" together with the statement of means and averments of overt acts properly charges a conspiracy to defraud the United States in violation of Title 18 U.S.C.A. § 371, I do not think this portion of Count I should be dismissed or that my action in this regard will be prejudicial to the rights of the movants.

The motion to dismiss Count I is denied.

### Counts II and III

Count II is in the following language:

"That on or about September 1, 1954, at Davisville, within the District of Rhode Island, said defendants, in a matter within the jurisdiction of the said Department and Agency, knowingly, wilfully and with intent to defraud the United States, falsified, concealed and covered up by trick, scheme and device a material fact, to wit: said defendants misbranded materials delivered to said Agency to indicate that such materials were "Quix" concentrates when in fact they were "Bellaire" beverage base concentrates, an inferior product in quality and price and which could not be used as a substitute thereof.

"In violation of Title 18, United States Code, Section 1001."

Count III is identical except that the date of the alleged offense is given as "on or about September 8, 1954".

 Movants contend that these counts are vague and uncertain and do not meet the requirements of the Sixth Amendment to the Constitution of the United States. I do not agree. Each contains a statement of the essential facts constituting the offense therein charged. The offenses are, in my opinion, sufficiently described to enable them to plead former jeopardy successfully if again brought to trial for the same offenses. This is all that is required by the Sixth Amendment. Armour Packing Co. v. United States, supra; United States v. Cruikshank, supra. It is also contended by the movants that these counts are legally insufficient because there is no allegation that the government relied upon the alleged misrepresentation and concealment. This contention is without merit. To establish a violation of Title 18 U.S.C.A. § 1001 it is not necessary to establish any reliance by the government on the alleged misrepresentation, or that it was deceived thereby, or suffered the loss of anything of value therefrom. De Rosier v. United States, 5 Cir., 218 F.2d 420; United States v. Myers, D.C.N.D.Cal., 131 F.Supp. 525. Cf. United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598.

### Counts IV and V

"That on or about September 1, 1954, said defendants, in Davisville, within the District of Rhode Island, did make and present to said Robinson, being then and there a person in the Naval Service of the United States with authority to approve for payment certain claims upon or against the United States, a false, fictitious and fraudulent claim upon and against the United States, said defendants then and there knowing such claims to be false, fictitious and fraudulent.

"In violation of Title 18, United States Code, Section 287."

Count V is identical except that the date of the alleged offense is set forth as "on or about September 8, 1954".

The government contends that these counts are sufficient because they are substantially in the language of the statute and further, that they meet the requirements of Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.

 It is true that at the present time it is no longer necessary to follow the old common law rules of criminal pleading. Sutton v. United States, 5 Cir., 157 F.2d 661; Lowenburg v. United States, 10 Cir., 156 F.2d 22. But the fundamental functions and requirements of an indictment have not been altered and modified. An indictment must contain all the essential elements of the offense charged and inform the defendant therein of the nature and cause of the accusation against him and this must be done with sufficient certainty to enable him to prepare his defense and if he is later charged with the same offense to interpose a plea of double jeopardy. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92; Sutton v. United States, supra; Lowenburg v.

United States, supra; United States v. McCulloch, D.C., 6 F.R.D. 559.

Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment shall be a "plain, concise and definite written statement of the essential facts constituting the offense charged."

■ In each of said counts there is merely the allegation that the defendants "did make and present * * * a false, fictitious and fraudulent claim upon and against the United States, said defendants then and there knowing such claim to be false, fictitious and fraudulent." In neither of them is there any description or identification of said false, fictitious or fraudulent claim; nor is there any statement of the particular or particulars wherein said claim was false, fictitious and fraudulent. In my opinion the omission of allegations as to these essential facts is fatal. United States v. Bougie, D.C.S.D.Cal., 118 F.Supp. 359; United States v. McCulloch, supra.

The government's contention that these Counts meet the requirements of Rule 7 (c) is not supported by an examination of Form 10, Fed.Rules Crim.Proc. Appendix of Forms, 18 U.S.C.A., an illustrative form of indictment for presenting a fraudulent claim against the United States, contained in the Appendix of Forms drafted in conjunction with the Federal Rules of Criminal Procedure. In Form 10 it will be seen that the alleged fraudulent claim is clearly described and identified and that there is a definite allegation as to the particulars wherein the defendant knew it to be fraudulent.

The motion to dismiss insofar as it relates to Counts IV and V is granted.

### Counts VI and VII

Count VI is as follows:

"That on or about September 1, 1954, said defendants, in Davisville, within the District of Rhode Island, knowingly and with intent to defraud and mislead the United States introduced and delivered for introduction in interstate commerce and consigned to said Department and Agency certain foods that were misbranded, to wit: certain cases containing "Bellaire" beverage base concentrates mislabeled to indicate the contents to be "Quix" flavoring concentrates.

"In violation of Title 21, United States Code, Section 331, et seq."

Count VII is identical except as to the date of the alleged offense.

Section 331 of Title 21 U.S.C.A. prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

Section 331 is a part of the Federal Food, Drug and Cosmetic Act. In United States v. Walsh, 331 U.S. 432, at page 434, 67 S.Ct. 1283, at page 1284, 91 L.Ed. 1585, in speaking of the purpose of the Act the Supreme Court said:

"The Federal Food, Drug and Cosmetic Act rests upon the constitutional power resident in Congress to regulate interstate commerce. * * To the end that the public health and safety might be advanced, it seeks to keep interstate channels free from deleterious, adulterated and misbranded articles of the specified types. United States v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48. It is in that interstate setting that the various sections of the Act must be viewed."

"Interstate Commerce" is defined in said Act as "commerce between any State or Territory and any place outside thereof." Title 21 U.S.C.A. § 321(b).

■ It is clear that the Federal Food, Drug and Cosmetic Act is based upon the interstate commerce clause of the constitution and it is equally clear that to confer jurisdiction upon this Court the indictment for an alleged violation of said Section 331 must show the interstate character of the offending transaction. McNally v. Hill, 3 Cir., 69 F.2d 38, affirmed 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238; O'Kelley v. United States, 8 Cir., 116 F.2d 966.

While Counts VI and VII purport to allege a violation of Section 331 of Title 21 U.S.C.A., these counts in fact allege that the place of introduction and delivery for introduction into interstate commerce of the misbranded foods was Davisville, Rhode Island, and that the destination of said foods was also Davisville, Rhode Island. It cannot be said that a transportation between two points in Davisville, Rhode Island, is transportation in interstate commerce. Each count in an indictment stands or falls on the strength of its own allegations and cannot be aided by recitals in or inferences to be drawn from other counts in the indictment. United States v. Hughes Tool Co., D.C.Hawaii, 78 F.Supp. 409.

During the oral arguments on this motion and in its brief the government conceded that it must show a transportation between points in different states to establish a violation of Title 21 U.S.C.A. § 331 but contended that the allegations of Counts VI and VII are sufficient because of the provisions of Title 18 U.S.C.A. § 3237 which provides in part as follows:

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

In my opinion this section has no relation to the question of what must be alleged in an indictment charging an offense involving transportation in interstate commerce. It relates to venue and to venue only. It provides that any offense involving transportation in interstate commerce is a continuing offense and that such an offense may be prosecuted in one of several specified districts at the election of the government. In the prosecution of such an offense it is both proper and necessary for the indictment to allege facts which show the interstate character of the transportation irrespective of the district where the offense is being prosecuted. Cf. United States v. Freeman, 239 U.S. 117, 36 S.Ct. 32, 60 L.Ed. 172; Armour Packing Co. v. United States, supra; United States v. Alaska Consol. Canneries, D.C.Wash., 2 F.2d 614. The absence of allegations as to facts showing the interstate character of the transportation is a fatal defect in Counts VI and VII.

The motion insofar as it relates to Counts VI and VII is granted.

In conclusion, the motion to dismiss is granted insofar as it relates to Counts IV, V, VI and VII and said counts are hereby dismissed; otherwise said motion is denied.