UNITED STATES of America,

v.

Juan Pedro FARINAS, Defendant.

No. 69 Cr. 481.

United States District Court
S. D. New York.

Dec. 30, 1969.

Robert M. Morgenthau, U. S. Atty., New York City, Southern Dist. of New York, for the United States, Peter L. Truebner, Asst. U. S. Atty., of counsel.

Sanford M. Katz, New York City, for defendant.

## OPINION

COOPER, District Judge.

Defendant's various motions seek dismissal of this indictment charging him in five counts with violating the Military Selective Service Act of 1967, discovery and inspection of certain material, and a bill of particulars.

### I. *Dismissal of the Indictment*

On November 15, 1968, the Grand Jury filed indictment No. 68 Cr. 927 charging defendant in one count with failure to perform duties required of him under the Military Selective Service Act of 1967, 50 U.S.C. App. § 462(a) and the rules and regulations promulgated thereunder, in that he, as a registrant ordered to report for induction, knowingly failed to obey the orders of Armed Forces representatives while at the place of induction. That indictment was subsequently dismissed by Judge Tenney as being too vague to permit defendant to adequately prepare a defense because the "orders of certain representatives of the Armed Forces of the United States" allegedly disobeyed were not specified or recited therein. United States v. Farinas, 299 F.Supp. 852 (S.D.N.Y.1969).

Defendant's case was then presented anew to the Grand Jury resulting in the filing on May 29, 1969 of the instant five-count indictment, 69 Cr. 481, which charges that defendant:

(a) knowingly failed, neglected and refused to obey the orders of representatives of the Armed Forces of the United States while at the place of in-

duction, to wit, he failed when ordered to do so to cease and desist distributing leaflets to other registrants, making speeches to other registrants, and engaging in boisterous and unruly behavior (Counts 1–3);

(b) knowingly failed, neglected and refused to report for and submit to induction into the Armed Forces of the United States (Count 4);

(c) knowingly by force and violence and otherwise hindered and interfered with the administration of the Military Selective Service Act of 1967 in that after being warned that activity disruptive of the processing of other registrants would constitute a felony he persisted in such activity by making speeches, distributing literature and engaging in boisterous and unruly behavior (Count 5). See 50 U.S.C. App. § 462(a); 32 C.F.R. § 1632.14.

### A. *All five counts*

#### 1. vindictiveness

Defendant first moves for dismissal of the indictment on the ground that the return of a five-count indictment following dismissal of the prior one-count indictment "constitutes a form of vindictiveness against the defendant in violation of the due process provisions of the Fifth Amendment."

■ We have no evidence of vindictiveness here. Indeed, defendant has obtained that which he sought: specification and particularization of the offenses charged. In any event defendant has not been prejudiced by the filing of a five-count indictment. The authorities relied upon by defendant, all involving a defendant who had been treated more severely following the assertion of certain constitutional rights, are inapposite. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (more severe sentence on retrial); United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (exposure to death penalty if trial by jury); Colon v. Hendry, 408

F.2d 864 (5th Cir. 1969) (charging a felony on retrial in place of a misdemeanor). Here the maximum penalty to which defendant could be subjected if convicted has not been increased by the additional counts since all offenses charged arose out of a single incident. See United States v. Ketchum, 320 F.2d 3, 8 (2d Cir. 1963).

#### 2. multiplicity

■ His claim that the indictment must be dismissed on grounds of multiplicity, or that the Government must at this stage elect among counts, is denied. See United States v. Ketchum, supra at 7–8; United States v. Leibowitz, 420 F.2d 39 (2d Cir., Dec. 19, 1969). We cannot find that the alleged multiplicity "appears upon the face of the indictment so clearly that it is manifest that the Government cannot, as a matter of law, prove separate and distinct offenses." United States v. Birrell, 266 F. Supp. 539, 544 (S.D.N.Y.1967). Each provision allegedly violated and each count charged herein involve or may involve proof of elements in addition to or different from the others. Compare Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

### B. Counts 1–3

#### 1. Constitutionality of the Statute

##### a. delegation of legislative power

■ Defendant first seeks dismissal of Counts 1–3 on the ground that 50 U.S.C. App. § 462(a) constitutes an impermissibly broad delegation of legislative power by the Congress. This subsection provides in pertinent part that it shall be a criminal offense to knowingly fail to perform any duty as established by the rules and regulations promulgated under the authority of the President "to prescribe the necessary rules and regulations to carry out the provisions of this title." 50 U.S.C. App. § 462(a); 50 U.S.C. App. § 460(b) (1) and (c).

His argument is premised on the alleged absence of any adequate legislative

standard for the exercise of this delegation of authority, relying upon Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). While concededly broad, we believe the standard supplied by Congress of "necessary * * * to carry out the provisions of this title" to be constitutionally adequate. The regulations which have been adopted directly relate to the fair and efficient functioning of the machinery of the draft system Congress established and "fill in the details" of the clear statutory objective. These rules and regulations have in the main been subjected to many years of administrative refinement and have received the approval implicit in successive Congressional reenactments of this statutory scheme. See generally, Selective Draft Law Cases, [Arver v. United States] 245 U.S. 366, 389, 38 S.Ct. 159, 62 L.Ed. 349 (1918); Seele v. United States, 133 F.2d 1015, 1019 (8th Cir. 1943); United States v. Herling, 120 F.2d 236 (2d Cir. 1941); 1 Davis, Administrative Law §§ 2.01–2.06 (1958). See also, Savoretti v. Small, 244 F.2d 292, 296–297 (5th Cir. 1957) (power of the President to redelegate his rule-making authority).

### b. Vagueness and Overbreadth

█ In an argument related to the foregoing, defendant alleges that 50 U.S. C. App. § 462(a) is both void for vagueness and overly broad because the duties required to be performed by a registrant are not specified within the statute himself and are "multitudinous" in number. The short answer is that to violate this section there must be a wilful and understanding failure or neglect to obey a known duty. See United States v. Hoffman, 137 F.2d 416, 419 (2d Cir. 1943).

### 2. Constitutionality of the Regulations

Turning from an attack on the general language of the statute, defendant trains his sights on the specific duties allegedly violated in Counts 1–3.

32 C.F.R. § 1632.14(b) (4) imposes a duty on the registrant at the time he reports for induction "to obey the orders of the representatives of the Armed Forces while at the place where his induction will be accomplished." It is the violation of this duty which is the basis of counts 1, 2 and 3 of this indictment.

### a. void for vagueness and overbreadth: delegation of licensing power

Defendant first claims that this regulation is void for vagueness, because it fails to give a defendant "due notice that an act has been made criminal before it is done." Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951). Second, he argues that in any event Congress never intended that a violation of this particular regulation be made criminal.

█ There is nothing to support defendant's latter contention—indeed the very language of 50 U.S.C. App. § 462 (a) seems ample refutation. His first argument, however, raises a far more substantial question.

That issue is not really whether the regulation is unduly vague in the manner alleged by defendant—indeed, defendant is only in violation when he knowingly disobeys a specific order he has received—but whether the regulation is overly broad or vague because of its failure to provide any express standard to guide and thereby limit the exercise of the power delegated to Armed Forces representatives.

This regulation requiring that an inductee obey all orders given him by appropriate personnel at an induction center appears at first blush to vest in such military officials untrammeled authority and discretion. From the face of the indictment itself, alleging violation of specific orders directed to defendant to cease making speeches and distributing leaflets, it is clear that this regulation can restrict an inductee's freedom of speech.

█ To make this observation, however, is not to resolve the issues presented. All limitations on First Amend-

ment rights are not forbidden.[1] The Supreme Court in Cox v. Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 465, 13 L.Ed. 2d 471 (1965) reaffirmed the principle that "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."

Statutes permitting administrative officials discretionary power to "license" speech and speech-related activities have however been held unconstitutional unless sufficiently limited in scope and purpose. See, e. g., Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352 (1940); Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267, 280 (1951); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90–91, 93, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). These cases involved (1) statutes expressly aimed at speech-related activities, at least as authoritatively construed by the States; (2) discriminatory application of unfettered discretion by local officials; (3) the use of public places, streets, and parks. None of these factors appear from the moving papers to be present in this case.

The power vested in Armed Forces representatives to regulate the exercise of First Amendment rights through the enforcement of 32 C.F.R. § 1632.14(b) (4) is by its very context narrow in time, place and persons affected. Cf. Cox v. New Hampshire, 312 U.S. 569, 576, 61 S.Ct. 762, 85 L.Ed. 1049, 133 A.

L.R. 1396 (1941). The regulation only applies to inductees, and then only for that period of time while they are at the induction center.

■ Nevertheless, the narrow application of this regulation might not by itself validate its delegation of "licensing" power if the discretion vested in those authorized to give orders were unrestrained. The Government has a clear and substantial interest, however, in this regulation: it insures an orderly induction process and provides an essential link in a chain of regulations protecting the functioning of the system provided by Congress in the Selective Service Act for the raising of armies. 32 C.F.R. § 1632.14. We believe it clear from the statutory authorization (50 U.S.C. App. § 460(b) (1)) to prescribe regulations "to carry out the provisions of [the Selective Service Act]" that to be legal and enforceable, orders given pursuant to the authority of 32 C.F.R. § 1632.-14(b) (4) must relate to the induction process.

■ Thus, this delegation of power is not unrestrained and is in sharp contradistinction to arbitrary and unauthorized orders unrelated to induction processing. Cf. United States v. Spock, 416 F.2d 165, 173 n. 20 (1st Cir. 1969); United States v. Farinas, 299 F.Supp. at 854. We are not presented with any evidence indicating that this regulation has been administered or applied other than in a non-discriminatory manner consistent with this purpose. We conclude therefore that this regulation is not void on its face and that to the extent it represents a delegation of licensing power that discretionary power is restricted to within constitutional bounds.

---

1. Justice Black, rejecting the argument that the First Amendment provides an unqualified right to free speech, stated that "[s]uch an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and whereever they please." Adderley v. Florida, 385 U.S. 39, 47–48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).

## b. restriction of freedom of speech by these orders

Having found this regulation sufficiently narrow and specific in the discretion it vests in administering officials, we are faced with the question of whether consistent with the Constitution a defendant may ever be held to account for refusing to obey orders to cease making speeches and distributing leaflets at an induction center. It is evident, even if the order given was authorized by the regulation and in fulfillment of the Government's interest (i. e. related to the induction process and directed at the non-speech elements (disruptive effects) of defendant's conduct), that orders given pursuant to this regulation can indirectly restrict an inductee's freedom of speech.

In United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–1679, 20 L.Ed.2d 672 (1968) the Supreme Court stated:

"This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."

Accordingly, resolution of this issue requires a balancing of the two conflicting interests (that of the Government and of the individual) to determine which demands the greater protection under the circumstances. See United States v. O'Brien, *supra.*

Certainly the fact that the defendant is charged with making speeches and distributing leaflets in violation of an order directing him to stop such activity does not on its face demand that the balance be struck in defendant's favor. The decision in Callison v. United States, 413 F.2d 133, 136 (9th Cir. 1969) [2] makes this clear:

"Here the very process of induction was under way and those present were subject to the processing orders of the officers in charge. Even so, appellant was not prevented from engaging in orderly speech nor orderly registration of opposition or grievance. He was precluded only from efforts to incite and solicit others to join with him in an expression of opposition to the very process they were undergoing. The order was thus directly related to a valid and important government purpose; that of maintaining an orderly process of induction —one free from disruption or disruptive potential.

Further, the rights of others were involved. It must be noted that this was not an open public gathering.*

* Use of a public building for a specific public purpose, such as a jail, a schoolhouse or an induction center, will justify governmental limitation on exercise of First Amendment rights which interfere with that purpose. See Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)." [3]

Appellant's conduct was an intrusion upon persons met because their presence was required for a specific purpose. Appellant as an inductee had no greater right than any outsider to intrude himself upon those captively present by harangue upon any subject or solicitation for any purpose. Since any such intrusion is potentially offensive and since the gathering was Government compelled, the Government might decently feel a responsibility to maintain the gathering free from such intrusion.

On balance we find the restriction imposed upon appellant's rights by the

2. *Callison* was a prosecution for refusal to submit to induction (not refusal to obey an order). However, the prosecution hinged on the proposition that Callison's refusal to stop soliciting signatures for a petition when ordered to do so, with knowledge that his conduct would make induction impossible and that disobedience would subject him to the consequences of a refusal to submit to induction, constituted refusal to submit to induction. Callison's defense was that the order was an impermissible intrusion on his First Amendment rights.

order in question to be wholly reasonable.

■■ Defendant is of course not precluded from attempting to show that the orders in this case impermissibly exceeded that which was necessary to further the Government's legitimate interest and that on balance defendant's interest is entitled to the greater protection.[4] By the same token, however, the foregoing establishes that the resolution of such constitutional issues as remain herein with regard to the first three counts (alleged constitutionally protected conduct by defendant and arbitrary and discriminatory application by military officials) must await development of the facts upon trial. See generally, United States v. Branigan, 299 F.Supp. 225, 237 (S.D.N.Y.1969).

### C. Count 5

■ Defendant challenges the constitutionality of the statutory duty not to "knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title or the rules or regulations made pursuant thereto * * *," 50 U.S.C. App. § 462(a), the violation of which is the subject of count 5, on grounds of vagueness and overbreadth. He claims specifically that the 1948 addition of the term "or otherwise" renders the section unconstitutional, particularly if the addition is seen as a Congressional response to the 1943 decision in Bagley v. United States, 136 F.2d 567 (5th Cir. 1943).

For reasons similar to those discussed with regard to the claim immediately preceding, we deny defendant's motion. As stated by the First Circuit in United States v. Spock, 416 F.2d 165, 173 n. 20 (1969) in connection with a similar challenge to another portion of 50 U.S.C. App. § 462(a):

"We do not believe that section 462 (a) is overbroad or vague. A special obligation exists as to federal statutes to construe them to avoid unconstitutionality, Scales v. United States, [367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed. 2d 782 (1961)], so long as such does not result in substantial rewriting. The fact that a seemingly normal criminal statute * * * may in some instances apply to affect freedom of association or freedom of speech does not invalidate the statute. The court's obligation is, rather, to make sure that such a statute does not improperly infringe upon speech in any particular instance. Nor do we believe the indictment failed in its function of informing the defendants of the crime with which they were charged." [citations omitted]

■ Having found this portion of 50 U.S.C. App. § 462(a) not to be unconstitutional on its face, we believe it clear that count 5 of this indictment must be upheld against constitutional attack. Defendant is specifically charged in part with "engaging in boisterous and unruly behavior" disruptives of the processing of other registrants so as to hinder or interfere with the administration of the Act. This is sufficient to state an offense. As with counts 1–3, the issue of

3. See also, Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965).

4. Defendant's burden in this regard is substantial. Faced with the constitutionality of 50 U.S.C.App. § 462(b)(3) prohibiting knowing destruction of a Selective Service registration certificate, the Supreme Court in United States v. O'Brien, *supra* set forth the following criteria for the balancing of interests:

"we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedom is no greater than is essential to the furtherance of that interest. * * *" 391 U.S. at 377, 88 S.Ct. at 1679.

whether or not defendant's conduct was in fact constitutionally protected by the First Amendment must await development of the facts upon trial.

### D. Count 4

■ Defendant alleges that count 4 is duplicitous and must be dismissed because it charges two separate offenses, failure to report for and failure to submit to induction, in a single count. This claim has been specifically rejected by the Eighth Circuit. See United States v. Gutknecht, 406 F.2d 494, 495–496 (1969), cert. granted 394 U.S. 997, 89 S.Ct. 1595, 22 L.Ed.2d 775. From the facts developed to date herein it appears possible that both a failure to submit to induction as ordered (on August 13, 1968) and a failure to report for induction (a continuing duty) may be factually established. See United States v. Meyers, 410 F.2d 693 (2d Cir. 1969) (failure to submit to induction); United States v. Toussie, 410 F.2d 1156, 1158–1159 (2d Cir. 1969) (continuing duty to report for induction). See also, United States v. Trimm, 416 F.2d 1145 (2d Cir., October 9, 1969).

### E. Conclusion

Accordingly, defendant's motion to dismiss the indictment is denied in all respects.

### II *Discovery*

■ Request 1 is granted. Defendant is entitled to inspect and copy each of his written or recorded statements within the possession or control of the Government. See United States v. Garrett, 305 F.Supp. 267 (S.D.N.Y. Sept. 23, 1969) (defining statements). See also, United States v. Fassler, 46 F.R.D. 43 (S.D.N.Y.1968).

Request 3 is denied except to the extent granted in Request 1.

■ Request 4 is granted except that defendant need not be furnished with the race of the members of his Local Board or with the residences of such members, other than whether or not they reside in the county in which the Board has jurisdiction. See United States v. Pierce, 69 Cr. 353 (S.D.N.Y. Nov. 3, 1969); United States v. Branigan, 299 F.Supp. 225, 237 (S.D.N.Y. 1969); Clay v. United States, 397 F.2d 901, 909–911 (5th Cir. 1968).

Request 5 is granted. See United States v. Branigan, *supra*, 299 F.Supp. at 238.

■ Request 6 is granted to the extent that "the Government shall state whether a quorum was present at each meeting of said [Board] relating to defendant's classification or status." *Id.*

Request 9 is denied. See United State v. Pierce, *supra* (wherein the Government represented by affidavit that the Classification Record (SSS Form 102) is available for examination and inspection at defendant's Local Board).

Request 10 is granted to the extent that the Government shall furnish a copy of the Record of Delinquents (SSS Form 302) as of the date on which defendant was ordered to report for induction. See United States v. Pierce, *supra*.

Requests 2, 7, 8, 11, 12, 13, 14 and 15 are denied.

### III *Bill of Particulars*

Items 1, 6 and 11 are granted to the extent consented to by the Government.

Items 3, 8 and 13 are granted except as to subparts (a) thereunder.

Items 4, 9 and 14 are treated as requests made pursuant to Rule 16(b) and granted as such.

Item 5 is granted, if known.

Items 15 and 16 are granted to the extent consented to by the Government.

Item 19 is granted. See United States v. Branigan, *supra*, 299 F.Supp. at 237.

Items 20, 21 and 23 are denied except as granted in Requests 4, 5 and 6 of defendant's motion for discovery.

Item 26 is granted except that the time may be approximate.

Items 2, 7, 10, 12, 17, 18, 22, 24 and 25 are denied.

This shall be considered an order; settlement thereof is unnecessary.

So ordered.